**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TERENCE PINCKNEY,<br>Plaintiff,<br>v.<br>CITY OF CAMDEN, ET AL.,<br>Defendants. | Case No. 1:26-cv-6542-KMW-EAP<br><br>**MEMORANDUM OPINION AND ORDER** |

**THIS MATTER** comes before the Court pursuant to the application ("Application") of pro se Plaintiff Terence Pinckney ("Plaintiff") to proceed *in forma pauperis* ("IFP") (ECF No. 1-1); and Plaintiff having brought this action against defendants Officers Cuevas and Alejandro, Sergeant Levy, and the City of Camden ("Defendants"), on June 3, 2026, and the Court finding;

1. Pursuant to 28 U.S.C. § 1915(a)(1), this Court may allow a litigant to proceed without prepayment of fees if the litigant "submits an affidavit that includes a statement of all assets" and "states the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." "The decision to grant [IFP] status turns on whether an applicant is 'economically eligible' for such status." *Taylor v. Supreme Court*, 261 F. App'x 399, 400 (3d Cir. 2008) (quoting *Sinwell v. Shapp*, 536 F.2d 15, 19 (3d Cir. 1976)). "A person need not be 'absolutely destitute' to proceed [IFP]; however, an [applicant] must show the inability to pay the filing and docketing fees." *Id.* (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)).

2. Plaintiff's affidavit in support of the Application sufficiently establishes an inability to pay the Court's fees. Specifically, he asserts that he has no income or expenses and that he does not have a spouse to contribute income or share in expenses. He also states that he is homeless and indigent.

3. The Court shall accordingly screen the action to determine whether Plaintiff's complaint (ECF No. 1) is (a) frivolous or malicious; (b) fails to state a claim on which relief may be granted; or (c) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

4. When evaluating whether a complaint must be dismissed under 28 U.S.C. § 1915(e), the Court applies the same standard of review that governs a motion to dismiss pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). *Grayson v. Mayview State*

*Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). To survive dismissal under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court notes that while pleadings filed by *pro se* plaintiffs are to be liberally construed and are held to a less stringent standard than those filed by attorneys, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

5. A complaint must also comply with Rule 8, which requires a complaint to include: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). The Rule also requires each allegation be "simple, concise, and direct" yet provide enough specificity as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555. A complaint fails to satisfy Rule 8 when the court must sift through irrelevant or unclear allegations to discern the claims asserted, such as where it (a) "contain[s] multiple counts where each count adopts the allegations of all preceding counts"; (b) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (c) fails to separate "into a different count each cause of action or claim for relief"; or (d) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

6. Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for unlawful seizure and false arrest (Count I), unlawful search (Count II), failure to intervene (Count III), malicious prosecution (Count IV), and municipal liability (Count V).

### A. Individual Capacity Claims

7. The first two individual capacity claims implicate the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures, which includes protections against false arrest and unlawful detention. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 680-83 (3d Cir. 2012).[1] To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest: and (2) that the arrest was made without probable cause. *Id.* at 680. Unlawful detention sweeps broader than false arrest. False imprisonment requires only a showing that: (1) a plaintiff was detained; and (2) the detention was unlawful. *Id.* at 682-83. Thus, an individual may state a claim for an unlawful detention where he plausibly alleges that an investigative detention was not

[1] A fourth amendment claim for false imprisonment is synonymous with a claim for an unlawful seizure. *See Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

supported by reasonable suspicion. *See, e.g., Johnson v. City of Pittsburgh*, Civ. No. 16-1068, 2017 WL 2437322, at *6-7 (W.D. Pa. May 10, 2017) (recommending denial of a Rule 12(b)(6) motion to dismiss unlawful seizure claim where the alleged facts plausibly supported a finding that the investigative detention was unreasonable), Report and Recommendation adopted, 2017 WL 2418722 (W.D. Pa. June 5, 2017).

8. A Fourth Amendment seizure occurs when a police officer by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009) (quoting *Terry, v. Ohio*, 392 U.S. 1, 19-20 n.16)). *See also Florida v. Bostick*, 501 U.S. 429, 436 (1991) (a seizure occurs when a reasonable person would not feel free to leave or otherwise terminate the encounter).

9. Pursuant to *Terry*, a law enforcement officer may conduct a brief, investigative seizure if they have reasonable suspicion that criminal activity is afoot. 392 U.S. at 30. For the seizure to comply with the Fourth Amendment, the facts known to the officers at the moment of seizure must support a "particularized and objective basis for suspecting [the defendant] of [unlawful] activity." *United States v. Brown*, 448 F.3d 239, 246 (3d Cir. 2006) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). While a less demanding standard than probable cause, reasonable suspicion requires "at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "In evaluating whether there was an objective basis for reasonable suspicion, the Court considers 'the totality of the circumstances—the whole picture.'" *Brown*, 448 F.3d at 246.

10. As to **Count I**, the allegations support an inference that Plaintiff was subjected to a Fourth Amendment seizure when Officer Alejandro approached him, accused him of unlawful gambling, and demanded identification to issue a summons (Compl. ¶¶ 9-14), because at that point, a reasonable person would not have felt free to leave or terminate the encounter. *See Bostick*, 460 U.S. at 436.[2] That detention required reasonable suspicion. *See Crandell*, 554 F.3d at 84.

Plaintiff claims that Officer Alejandro informed him that he had received a call regarding gambling but had not personally observed or corroborated any criminal activity. (Compl. ¶¶ 9-15.) The Court observes that a reliable tip can be the basis of reasonable suspicion. *See United States v. Nelson*, 284 F.3d 472, 478 (3d Cir. 2002). However, the contents of the tip in this case are not fully fleshed out, so the court declines to dismiss the unlawful detention claim on screening.

Plaintiff next argues that he was subjected to a full-blown arrest when Officer Cuevas handcuffed and searched him following a "peaceful, verbal assertion of rights",

---

[2] The Court takes judicial notice that in the City of Camden, gambling in public is a civil offense pursuant to MC-395-4. This is confirmed by public docket search matching Plaintiff's name, description of charges, and the arresting officer. *See* Summons-25 2025 962, Police Case No. 2506130489. The Third Circuit has held that officers may subject an individual to an investigative detention to investigate a violation of a city ordinance. *See Grant v. City of Phila.*, No. 22-3200, 2024 WL 1328312, at *2 (3d Cir. Mar. 28, 2024).

devoid of physical resistance or verbal obstruction. (Compl. ¶¶ 21-23.) Because the Court allows the unlawful detention claim to proceed, and because the subsequent arrest may stem from that unlawful detention[3] or otherwise lack probable cause, the false arrest claim likewise survives screening.

The Court also declines to dismiss **Count II** on screening. Because the underlying arrest may lack probable cause, any subsequent search incident to that arrest would be unconstitutional.

11. In **Count III**, Plaintiff asserts a claim against Sergeant Levy for failure to intervene to stop the allegedly unlawful arrest and search. (Compl. ¶¶ 49-51.)

12. The Court will dismiss Count III because the Third Circuit has not extended failure-to-intervene liability beyond the Eighth Amendment context of prisoners alleging excessive force or sexual assault. *See Lozano v. New Jersey*, 9 F.4th 239, 246 n.4 (3d Cir. 2021) (explaining that this theory of liability has not be extended "to the false arrest context."). At least one court in our Circuit has held that "there is no such thing as a failure to intervene claim in the context of an unlawful search." *Parker v. Gainey*, No. 2:23-CV-2102, 2025 WL 2062563, at*8 (W.D. Pa. July 23, 2025). Other courts in our Circuit have dismissed claims for failure to intervene in the false arrest context on qualified immunity grounds, finding the right in question not "clearly established." *See, e.g.*, *Ogrod v. City of Phila.*, 598 F. Supp. 3d 253, 273 (E.D. Pa. 2022); *Outlaw v. City of Phila.*, Civ. No. 21-1290, 2021 WL 3471168 (E.D. Pa. Aug. 6, 2021).

The claim will be dismissed *with prejudice* as non-cognizable, and in the alternative, barred by qualified immunity.

13. In **Count IV**, Plaintiff raises a claim for malicious prosecution. To prevail on a Fourth Amendment malicious prosecution claim, a plaintiff must establish that (1) the defendant initiated a criminal proceeding: (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

14. Here, Plaintiff has failed to allege that he suffered a seizure as a consequence of a legal proceeding. In *Gallo v. City of Phila.*, the Third Circuit reaffirmed that the seizure in question must occur because of the charges. 164 F.3d 217, 222 (3d Cir. 1998). Although courts have adopted a broad definition of what constitutes a seizure, the Circuit concluded that the plaintiff's situation in *Gallo* presented a "close question." *Id.* There, the plaintiff was arrested and posted a bond which included prohibitions from traveling outside

---

[3] If the initial detention for gambling in public was unsupported by reasonable suspicion, then the subsequent arrest would constitute fruit of the poisonous tree. *See Nix v. Williams*, 467 U.S. 431, 441 (1984) (the fruit of the poisonous tree doctrine "require[es] courts to suppress evidence as the tainted 'fruit' of the unlawful government conduct and apply the exclusionary rule").

Pennsylvania and New Jersey, required weekly contact with pretrial services, and attending all court hearings for his trial. *Id.* In *DiBella v. Borough of Beachwood*, the court declined to find a seizure where the plaintiff was only issued a summons, never posted bail, was free to travel, and did not have to report to pretrial services. 407 F.3d 599, 603 (3d Cir. 2005).

Plaintiff has not described any restraint of his liberty post-initiation of charges. He alleges that he was given a summons and then appeared in court to contest the charges. (Compl. ¶¶ 31-32.). Therefore, his situation appears more akin to *DiBella*.

Because Plaintiff has not pled sufficient facts to plausibly allege the fifth element of his malicious prosecution claim, the Court will dismiss Count IV. However, the dismissal of this claim will be *without prejudice* because Plaintiff may be able to cure the identified deficiency.[4]

**Municipal Liability Claim (Count V)**

15. To sustain a *Monell* claim,[5] A plaintiff may either plead an unconstitutional policy or custom of the municipality that led to his or her injuries or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice. *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019). Under the first theory, to hold a municipality liable for a constitutional deprivation pursuant to Section 1983, a party must show (1) that the municipality had a policy, custom, or practice and (2) that the policy itself violated a constitutional right or that the policy or custom was the moving force behind the constitutional tort of one of its employees. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted).

16. A policy is made when an official possessing final policymaking authority issues a proclamation, policy, or edict. *See LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 126 (3d Cir. 2003). Custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

17. Claims for failures in training, supervision, and discipline require a plaintiff to establish that a municipality's failure to train, supervise, or discipline "amounts to deliberate indifference to the rights of persons with whom the [subordinates] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Under *Monell*, deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Ordinarily, this means that a plaintiff must show that "[a] pattern of similar constitutional violations" put the city

---

[4] While the citation for gambling in public might not qualify as a criminal proceeding, *see Lewis v. Borough of Conshohocken*, No. 25-5257, 2026 WL 1734556, at *15 (E.D. Pa. June 16, 2026), Plaintiff was also charged with hindering apprehension or prosecution.

[5] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

on notice that, by failing to act, it was being deliberately indifferent to [arrestees'] rights. *Connick v. Thompson*, 563 U.S. 61, 62 (2011).

18. Here, Plaintiff claims that the Camden Police Department maintains an unconstitutional policy, custom or practice of executing investigative stops and custodial arrests based solely on unverified anonymous tips, without independent police corroboration or probable cause, and that it deliberately fails to train, supervise, and discipline its officers regarding the limits of *Terry* stops, the necessity of probable cause of custodial arrest, and the constitutional boundaries of obstruction charges, these customs or inadequacies were the moving force behind the violation of his rights. (Compl. ¶¶ 36-38.)

19. Plaintiff's claims cannot survive screening for two reasons: First, because the sum of his allegations as to *Monell* liability consists of a threadbare recital of the elements needed to satisfy the *Monell* claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and "bald assertions or legal conclusions fail to state a claim."). Second, Plaintiff has not identified a specific policy or policymaker responsible for implementing such a policy, nor has he identified a pattern of similar constitutional violations necessary to demonstrate a custom or deliberate indifference. *See Bielevicz*, 915 F.2d at 250; *Connick*, 563 U.S. at 62.

Because Plaintiff may be able to cure the deficiencies, the Court will dismiss Plaintiff's municipal liability claim (Count V) *without prejudice.*

On this **4th day of November,** having considered the application to proceed without prepayment of fees under 28 U.S.C. § 1915 (ECF No. 1-1),

**IT IS ORDERED** the Application is **GRANTED.**

1. The clerk is directed to file the complaint (ECF No. 1).

2. The Court hereby **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims for malicious prosecution and *Monell* liability (Counts IV & V), and **DISMISSES WITH PREJUDICE** Plaintiff's claim for failure to intervene (Count III).

3. The Clerk shall issue a summons and the U.S. Marshals Service shall serve a copy of the complaint, summons, and this order upon the defendant(s) as directed by the plaintiff. All costs of service shall be advanced by the United States.

KAREN M. WILLIAMS
United States District Judge